Miller, J.
Numerous questions were raised upon the argument as to the validity of the conviction of the accused.
Among others, and perhaps the most serious one, arises upon the motion made by the prisoner’s counsel at the close of the testimony of the prosecution upon the trial of the indictment, to acquit the defendant upon the ground of the insufficiency of the proof that the affidavit was made upon which the perjury was assigned. The same motion was renewed at the close of the whole testimony, and the court were then requested to instruct the jury to acquit on the ground that the oath was not administered to the defendant. Each of the motions was denied, and an exception taken to the several rulings of the judge in reference to the same. If, as is urged, the oath was not administered, the allegation in the indictment that the accused swore to the affidavit was not proven, the evidence would not justify a conviction, and the court should have discharged the prisoner by directing an acquittal.
*177 In order to determine accurately how the fact was, it is necessary to examine carefully the testimony, appearing in the record before us, as to the oath having been administered by the notary to the accused.
The notary Maclay, who was sworn upon the trial, after looking at the affidavit, in response to a question put to him by the public prosecutor, to the effect that the persons there indica ted. were sworn before him to the truth of the affidavit, and that it was subscribed by him as a notary public, answered in the affirmative. Upon his cross-examination, after stating that he could not remember the specific occasions on which he had taken affidavits, and the character of the affidavits taken by him, he stated that he had no particular recollection of this affidavit, except seeing his signature to it.. He thought it was taken at the office, but he did not remember the place. He did not recollect positively any matter connected with it. That he testified to the verification from seeing his certificate to it as a notary public, and beyond that had no recollection as to the place or circumstances under which it was taken. He also stated that all affidavits were taken, with few exceptions, at the company’s office in Pine street; but from the circumstances that the affidavits were usually taken in their office, with some exceptions, and that he was frequently down in the neighborhood, he argued that it was taken there. His examination elicited the fact that he was uncertain as to the place and circumstances, and that he could not positively or directly swear to the taking of the affidavit. In fact, it was mere conjecture, arising from the circumstance that his name was' subscribed to it as a notary public. Standing alone, the testimony of the notary was very loose, uncertain, and unreliable. He does not swear to the material fact in the case, that he did administer the oath to the accused, and it is only for the reason that he finds his name attached to the *178 jurat that lie “ thinks” and “argues” and it may be truly said, perhaps, he supposes that he took the affidavit. Such testimony is certainly entitled to but little consideration. The very fact that he .hesitates, qualifies and limits his testimony, evinces that he had no confidence in the truth of the fact that he actually did take the affidavit. If he knew that he did, or even if he actually believed that such was the truth, there can be no doubt that he would have sworn tq it directly. He fails to do this, and in the absence of any other proof, and if the case stood on his testimony alone, it is at least exceedingly doubtful whether the evidence was sufficient to hold, as a matter of law, that proof had been given that the accused took the oath. Weighing such evidence by the rules which have been established by the decisions of the courts, and' the principles of common law, it was certainly very slight and uncertain. The certificate which the notary had given on its face, in connection with the testimony, raised a presumption, perhaps, that the officer had done his duty, and prima facie was barely enough to authorize such a conclusion. In view, however, of the fact that the officer himself, with the affidavit signed by him before him, refused to swear that he did administer the oath, this presumption was not very strong. While a presumption arising from a given state of facts may properly be indulged in favor of the performance by a public officer of an official duty, such presumption utterly fails when the evidence shows that it is entirely unwarranted. In a case like this, there must be proof of the oath taken, independent of the notary’s certificate, signature, seal and jurat.
Assuming that the evidence was prima facie sufficient, the presumption arising from the testimony was liable to be rebutted by other testimony that the oath was not administered, and we think the proof on the behalf of the prisoner was entirely sufficient to overcome *179 the evidence of the prosecution, and to establish that no oath ever was administered, and that the affidavit was not sworn to. This position is sustained by the testimony of the accused, who positively swore that he never took the oath; by the evidence of Allen and Wetmore, the vice-president and secretary of the company, each of whom testified that the affidavit was signed in the office of the company, was not sworn to, but was taken to be certified by the porter, Roberts, to the notary, and was so certified in the absence of the accused. This testimony is supported by Roberts, the porter, who swears that he took the affidavit to Maclay’s office and Maclay wrote his name upon and put his seal on it, and the witness then took and returned it to the office of the company. Whatever criticism may be made as to the credibility of the accused or such witnesses as were charged with crime in connection with the prisoner, there is nothing in the case which in any way impugns or discredits the testimony of Roberts, and his statement is sustained by the evidence of Snyder, another witness, who testifies that when the reports were made up they were sent to Maclay for his signature and his notarial seal generally by the porter, Roberts, and returned as sent, certified by the notary. Maclay’s evidence, as we have seen, does not contradict Roberts in any respect or the testimony of the other witnesses. If the testimony was untrue, Maclay should have been called to contradict it. The prosecution failed to do this, as they could have done, and in the absence of any evidence that the oath was taken and the failure of Maclay to contradict the proof, it is clear, uncontradicted and conclusive that no oath was administered, and it must therefore be assumed as established that Roberts told the truth and is entitled to full credit and belief. In fact, the other witnesses also, who are so strongly corroborated by his testimony as *180 well as the evidence of Maclay and all the circumstances, were entitled to credit in swearing that no oath was ever taken.
While the motive of the notary in thus sanctioning a loose, irregular and illegal mode of doing business of this kind may be considered, it is easy to see that it may be accounted for without ascribing to him any criminal intention. As he never swore that the oath was administered by him, and was not recalled to contradict the testimony of Roberts and the other witnesses showing the manner in which the certificate was made, the question as to his motive is entitled to but little weight, and is not material whether the act was done from sheer recklessness, undue haste, or for any other reason.
A careful consideration of the evidence leads to the conclusion that the prisoner never took the oath, and the court erred in refusing to direct the jury to render a verdict of acquittal, as should have been done at the close of the testimony.
If we are correct in the views we have expressed, it is not important to consider the other questions presented on the argument, which are difficult, and important, and the result must be that the conviction was wrong and should be reversed.
All concurred except Hand, J., who heard argument, but left the bench before decision, and Folgkeb, J., disagreeing, with opinion.
Conviction reversed.